**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| *Greater Kansas City Laborers Pension Fund, et al.* | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:22-cv-00349-DGK |
| *A Clean Slate, LLC* | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT A CLEAN SLATE, LLC'S RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEF ON ADMISSIBILITY OF AUDITOR TESTIMONY**

Defendant A Clean Slate, LLC (hereinafter "ACS"), by and through its attorneys Sandberg Phoenix & von Gontard P.C., pursuant to the Court's December 8, 2023 Order (ECF 55), submits the following Response to Plaintiffs' Supplemental Brief on Admissibility of Auditor Testimony.

**I.      INTRODUCTION**

As this Court is aware, ACS filed a Motion for Summary Judgment (ECF 28 and 29) that, generally and among other things, argued Plaintiffs have not – and cannot – produce admissible evidence ACS failed to make the requisite contributions for any project under the governing collective bargaining agreements ("CBAs"). In their Opposition to that Motion (ECF 37), Plaintiffs attempted to create a fact dispute by attaching an affidavit from Construction Benefits Audit Corporation ("CBAC") audit supervisor Amy Rote ("Rote") (ECF 38) and a document Plaintiffs refer to as an "audit report" (ECF 38-1) purportedly demonstrating ACS' alleged contribution shortfalls. However, because Plaintiffs never identified Rote as a fact witness in their discovery

24995175

responses or Rule 26 disclosures,[1] nor identified Rote as an expert witness under Rule 26(e), ACS filed a Motion to Strike (ECF 43 and 44). As summarized, ACS argued Plaintiffs cannot rely on Rote's testimony because she was never identified as a witness, nor could Plaintiffs rely on the audit report because without Rote's testimony, they could present no admissible evidence, lay or expert, sufficient to lay the foundation for its admission into evidence.

Following the parties' briefing on the Motion for Summary Judgment and Motion to Strike, the Court entered its December 8, 2023 Order which denied both Motions as moot presumably on the basis the Court was unsure whether Plaintiffs' audit report may be introduced by a lay witness or whether an expert witness is required. (ECF 55 at 4-6). To that end, the Court tasked the parties with answering that question, and specifically ordered the briefs: "(1) identify the process used to create Plaintiffs' audit report; (2) discuss analogous § 1145 cases addressing the evidentiary questions; and (3) analyze the factors set forth in Federal Rules of Evidence 701 and 702 when making their respective arguments." (ECF 55 at 5-6).

Despite these limiting instructions, Plaintiffs' Supplemental Brief (ECF 60) argues various matters outside of the discreet subject matter of the Court's Order, seemingly in a misguided effort to manufacture a fact dispute to prevent summary judgment.[2] While ACS disputes these extraneous arguments, ACS' supplemental briefing strictly addresses the question at hand: whether the audit report may be introduced by a lay witness or whether an expert witness is required, and specifically

---

[1] *See* ECF 29-1, at Section A, by omission; ECF 44-2, at Section A, by omission; ECF 29-2, at 5.

[2] For example, Plaintiffs repeatedly comment on ACS' purported failure to present any evidence rebutting the figures in the audit report. (ECF 60 at 2-3, 10, and 12). But this argument is inherently flawed. ACS' Motion for Summary Judgment (ECF 28 and 29) and Motion to Strike (ECF 43 and 44) argue Plaintiffs cannot rely upon the audit report as evidence to support their claims because they failed to identify a witness, lay or expert, to lay its foundation – a position ACS maintains. Plaintiffs continue to bear the burden of proof. Thus, because the parties' briefing addresses the threshold question of admissibility rather than the weight of the evidence, there has been, and still remains, no reason for ACS to present evidence regarding the flaws in the audit report.

2

24995175

focuses on the three topics the Court ordered the parties to analyze.[3] For the reasons discussed herein, preparing the audit report – and opining on its findings – necessarily requires technical and specialized knowledge, training, and experience. Accordingly, Rote's testimony exceeds the scope of admissibility under Federal Rule of Evidence Rule 701 and falls within the purview of Rule 702.

## II. ARGUMENT

### A. Rote's background and process for creating the audit report.

Rote has been employed by CBAC since 2002, when she began as a field auditor. Amy Rote's Deposition Transcript ("Rote's Deposition"), attached hereto as Exhibit A, at 12:4-8. She moved into her current role, audit supervisor, in 2016. *Id*. at 12:23-135. As audit supervisor, she reviews all audits initiated by CBAC, reviews files, assists auditors in their work, and reviews final audit findings before they are published. *Id*. at 13:6-16. Rote has more than 30 years of payroll experience, and 22 years of experience specific to payroll auditing in the context of contribution benefits. *Id*. at 20:12-20. As part of her job, she uses a payroll auditing manual published by a third-party as well as written auditing procedures, reads ERISA statutes and regulations, and keeps abreast of changes in the law. *Id*. at 16:1-15, 1423-15:4, 17:11-18:5. She also attends continuing education seminars specific to collection of employee benefits. *Id*. at 8:22-10:12.

Rote testified she and her team of auditors relied on the following documents to complete the audit report: IRS Form 941s, W2s, and timesheets provided by ACS; remittance reports provided by both ACS and Plaintiffs; CBAs and letters of assent and/or project agreements[4]

---

[3] ACS reserves the right to address any arguments outside the discreet subject matter of the Court's Order at oral argument and in any subsequent briefing.
[4] Rote testified to recalling only two project agreements applicable to A Clean Slate. *Id*. at 35:24-36:12

24995175

purportedly binding ACS to the CBAs; certified payroll reports; and daily workforce reports for the KCI project. *Id.* at 28:18-30:25, 33:24-34:8, 34:22-36:2, 42:17-43:5.

After receiving the initial records from ACS, Rote and her team verified projects ACS' employees worked on which were purportedly subject to the jurisdiction of the governing CBAs. *Id.* at 40:21-42:11. Rote and her team then attempted to identify which individual employees performed work covered by the CBAs. *Id.* at 40:21-42:11. Rote testified they did this by first reviewing the various documents to determine the employees' job titles. *Id.* at 42:12-43:18. However, if the job titles could not be determined from the records, Rote testified Plaintiffs instructed her and her team to assume the work performed by those employees was covered by the CBAs. *Id.* at 43:19-44:9.

After determining which employees performed work covered by the CBAs (or were assumed to have performed covered work based upon Plaintiffs' instructions), Rote and her team began calculating the contributions purportedly owed. They did so by identifying the hours worked by ACS' employees purportedly subject to the CBAs and comparing those figures to the number of hours for which ACS paid contributions. *Id.* at 25:6-15; 56:20-57:23; 64:9-22. Rote and her team also utilized "CBAC's way of calculating that very fringe amount by Fund using [CBAC's] own version of the rates just to double check the way that the Fund's office allocated the payments by fund." *Id.* at 56:20-57:23. Notably, Rote testified any calculations resulting in a purported shortfall of contributions were reported verbatim in the audit report, but any calculations resulting in a credit (meaning ACS' reported contributions exceeded the hours worked) were ignored. *Id.* at 53:8-56:13.

To calculate the damages and interest purportedly owed, Rote testified she and her team used CBAC's billing software, which utilizes the language set forth in the trust agreements to

create a formula calculating the amount of damages and interest due based upon the passage of time between the date the contributions were allegedly due and the date the auditors bill the audit. *Id.* at 45:1-24.

In total, Rote and her team claim to have expended 213 hours of work calculating the purported contributions owed, damages, and interest set forth in the audit report. Rote's Deposition at 39:6-15.

> **B.** **Under Federal Rules of Evidence 701 and 702, and the analogous § 1145 case law, expert testimony is necessary to admit Plaintiffs' audit report into evidence.**
>
> **1.** **Preparing the audit report required technical or other specialized knowledge, experience, and training to complete, which disqualifies it as admissible under Federal Rule of Evidence 701 and places it squarely within the purview of Rule 702.**

Federal Rule of Evidence 701 provides in pertinent part, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . ***not based on scientific, technical, or other specialized knowledge within the scope of Rule 702***." (emphasis added). Here, Rote agreed "the area of auditing for contribution benefits for pension funds [is] a specialized area" and the required training is "different than auditing in other contexts" and is a "specialized training." Rote's Deposition at 20:21-21:16. Indeed, in conducting this audit, Rote and her team follow a set of written procedures and a published payroll auditing manual governing the audit process. *Id.* at 14:23-15:4; 16:1-9. Furthermore, Rote ***repeatedly*** testified that when auditing ACS' records and contributions, ***she relied on her experience and specialized training*** on how to audit contribution benefits to pension funds and, specifically, how to interpret the necessary documents to do so. *Id.* at 26:9-15; 31:17-20; 33:24-34:8; 35:3-9; 35:21-36:4; 38:5-10. In short, Rote's own testimony demonstrates the audit report – and necessarily any testimony regarding its creation and findings – exceeds the scope of Rule 701.

24995175

Moreover, Plaintiffs' argument Rule 701 controls because Rote's work is mere "tabulation" or "basic mathematical calculations" is misguided. Though Rote testified she only used "simple math" to calculate the contributions purportedly owed, she nonetheless testified "follow[ing] each of the steps requires training to know what that step entails." *Id.* at 21:3-12. Further, Rote agreed "not every audit is identical," and "the audit process can depend on the individual circumstances of an employer," with "many variables" impacting audit procedures. *Id.* at 14:23-15:25. Thus, while the mathematical calculations themselves may not be overly complex, the process of completing the audit is and requires technical or specialized knowledge, training, and experience.

Indeed, as discussed above, Rote and her team had to review the CBAs, letters of assent, and project agreements to first assess which projects were subject to the CBAs. Then, they had to identify which of ACS' employees were performing work covered by the CBAs. Only then could Rote and her team review the litany of financial and tax records to assess what hours were reported, what contributions were paid, and whether the contributions matched the reported hours, to calculate the purported contribution shortfalls.

This process, as described by Rote, is not mere tabulation, but rather requires someone with the requisite technical or other specialized knowledge, experience, and training to analyze the documents to extract the necessary information to complete the audit and opine on alleged deficiencies. Accordingly, Rote's testimony and the audit report exceeds the scope of admissible evidence under Rule 701 and places it squarely within the purview of evidence admissible only under Rule 702.

### 2. Rote's testimony satisfies the first element of Rule 702.

The most basic threshold question of admissibly under Rule 702 is whether it is ***more likely than not*** "the expert's scientific, technical, or other specialized knowledge will help the trier of

fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Here, that low bar is met, which is underscored by Plaintiffs' own Exhibits A through P (ECF 60-2-60-16).[5]

At her deposition, Rote testified extensively regarding the nature of Exhibits B, C, and E, the information utilized to create them, and the calculations contained therein. Rote's Deposition at 48:21-56:13 (Exhibit B); 56:17-60:8 (Exhibit C); 60:9-25 (Exhibit E).[6] Notably, Rote testified she did not create Exhibits B or C.[7] *Id.* at 52:10-15; 58:21-23. Indeed, she relied on her specialized knowledge, training, and experience to analyze the information contained therein to testify regarding their creation and what they purport to conclude. The voluminous spreadsheets relied on by Rote – totaling 24 in number – are not self-explanatory. Despite her lack of personal involvement in their creation, her testimony was necessary to understand the processes used in creating the "audit worksheets" and how they ultimately impact the results reflected in the audit report. Rote's specialized and technical training, experience, and knowledge in utilizing and interpreting the spreadsheets will assist the trier of fact to understand the audit report and determine facts in issue. This is precisely the type of testimony which is more likely than not going to be helpful to a trier of fact under Rule 702.

### 3. Analogous 29 U.S.C. § 1145 case law suggests the audit report may only be introduced via expert testimony.

As discussed in *United Ass'n Local 198 Pension Fund v. Stevens Plumbing & Piping, LLC*, "there is no bright-line rule that expert testimony must be provided in support of calculating delinquent contributions, interest, and liquidated damages." No. CV 19-403-SDD-SDJ, 2020 U.S.

---

[5] While ACS believes Rote's testimony satisfies the first element of Rule 702, ACS maintains there are significant concerns with the remaining elements based upon the instructions provided by Plaintiffs. However, the Court's Order did not expressly direct the parties to conduct a *Daubert* analysis on the admissibility of Rote's testimony or the audit report. *See* ECF 55. Accordingly, ACS does not waive, and expressly reserves, its right to challenge the admissibility and credibility of Rote's testimony and the audit report, including, but not limited to, challenging the assumptions used in creating the audit report, under a complete *Daubert* analysis in a later motion, if necessary.
[6] Time constraints at the deposition limited questioning to only Exhibits B, C, and E.
[7] She was not asked whether she created Exhibit E.

Dist. LEXIS 95489, at *18 (M.D. La. June 1, 2020). True, as the Court pointed out in its Order, several courts have taken the approach that audits of employers' contribution shortfalls do not require expert testimony. *See* ECF 55 at 4-5 (citing *Stevens Plumbing*, 2020 U.S. Dist. LEXIS 95489, at *18; *Enos v. Union Stone, Inc.* 732 F.3d 45, 49 (1st Cit. 2013); and *Trustees of Chicago Plastering Inst. Pension Tr. v. Cork Plastering, Co.*, 570 F.3d 890, 902 (7th Cir. 2009)). But, importantly, none of these cases are binding upon this Court, and there does not appear to be any clear guidance directly on point within the Eighth Circuit. Moreover, what these cases fail to provide is any significant analysis of the admissibility of audit findings in the context of Rules 701 and 702.

Unlike the lay witnesses in *Enos*, *Cork*, and *Stevens Plumbing*, here, Rote repeatedly testified she relied on her experience and specialized knowledge, experience, and training on how to audit contribution benefits to pension funds and interpret the documents necessary to conduct the audit of ACS. *Id.* at 26:9-15; 31:17-20; 33:24-34:8; 35:3-9; 35:21-36:4; 38:5-10. Rote also testified she relied on her knowledge, experience, and training to verify which projects were within the jurisdiction of the CBAs, which individual employees did work covered by the CBAs, and the accuracy of the numbers. *Id.* at 41:23-43:24; 49:21-50:2; 57:24-58:4; 59:4-21. Moreover, Rote testified she "us[ed] [CBAC's] own version of the rates just to double check the way that the Fund's office allocated the payments by fund." *Id.* at 56:20-57:23. This necessarily exceeds the scope of what can be derived directly from ACS' documents and amounts to more than mere "tabulation." Therefore, this matter is inapposite to *Enos*, *Cork*, and *Stevens Plumbing*.

Moreover, as the Court noted, there is also nonbinding case law suggesting that "an expert witness may be required when the employer's records are incomplete or complex." (ECF 55 at 5 (citing *Teamsters-Ohio Contractors Ass'n Health & Welfare Fund v. Tauro Bros. Trucking Co.*,

No. 10 CV 703, 2013 U.S. Dist. LEXIS 44552, at *11-15 (N.D. Ohio Mar. 28, 2013)).[8] During her deposition, Rote testified that due to the alleged incompleteness of ACS' records, she made the strategic decision to ignore any reported contributions exceeding the hours worked resulting in a "credit" to ACS. *Id.* at 53:8-56:13. ACS disputes Rote's suggestion she had inadequate records or, at the very least, anyone made ACS aware of this alleged shortcoming, but regardless, if true, Rote made tactical decisions in her calculations based on her perception the records were incomplete. Again, this type of independent thinking and action demonstrates Rote's role in this case exceeded that of a lay witness performing "tabulations," and was, in fact, the performance of a job requiring technical and specialized, training, knowledge, and experience to complete. Accordingly, Plaintiffs' audit report may be introduced only by expert testimony.

## III. CONCLUSION

For the above stated reasons, Defendant A Clean Slate, LLC respectfully requests the Court enter an Order finding the audit report may be introduced only by expert testimony, and from and for such other and further relief as this Honorable Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Jared M. Cluck*
Meghan E. Lewis, MO #62177
Jared M. Cluck, MO #70916
4600 Madison Avenue, Suite 1000
Kansas City, MO 64112
816-627-5332
816-627-5532 (Fax)
mlewis@sandbergphoenix.com
jcluck@sandbergphoenix.com

*Attorneys for Defendant A Clean Slate, LLC*

---

[8] Plaintiffs' argument this case is inapposite to *Tauro Bros.* because that *Tauro Bros* involved competing experts and a fact dispute over the findings is unpersuasive for the reasons discussed in footnote 2, *supra*.

9

## Certificate of Service

       I hereby certify that on the 23rd day of February 2024 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Bradley J. Sollars
Matthew J. McAndrews
Arnold, Newbold, Sollars & Hollins, P.C.
1100 Main Street, Suite 2001
Kansas City, MO 64105
bjsollars@a-nlaw.com
mjmcandrews@a-nlaw.com
*Attorneys for Plaintiffs*

                          */s/ Jared M. Cluck*